**[J-31-2016] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 19 EAP 2015 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered 11/10/2014 at No. 272 |
| | : | EDA 2013 reversing the Judgement of |
| v. | : | Sentence entered on 1/16/2013 in the |
| | : | Court of Common Pleas, Philadelphia |
| | : | County, Criminal Division at No. CP-51- |
| WILLIAM CHILDS, | : | CR-0012722-2010. |
| | : | |
| Appellee | : | ARGUED: March 9, 2016 |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: July 19, 2016**

I join the Majority Opinion, writing separately only to note, irrespective of the presumption arising from the statutory "castle doctrine," under current law, the Commonwealth has the burden to **disprove** self-defense beyond a reasonable doubt. It would appear that this burden arising from this Court's decisional law, *see infra*, already effectively establishes a presumption the defendant has a reasonable belief in the need to use self-protective force in **all** self-defense cases.

The jury here was explicitly informed of the Commonwealth's burden in the trial court's final charge:

> The defendant has raised the issue of whether he acted in self[-]defense when he stabbed Bryant Bell. Self[-]defense is called justification in the law of Pennsylvania. If the defendant[']s actions were justified you can not find him guilty beyond a reasonable doubt of any of these offenses. The issue having been raised, it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in justifiable self[-]defense.

N.T. 11/16/2012 at 113-14. However, the Commonwealth does not suggest this standard charge rendered a castle doctrine charge superfluous, or its absence harmless.

Notably, the amendment to the statute encompassing the castle doctrine was adopted in 2011, the year before this Court's decision in *Commonwealth v. Mouzon*, 53 A.3d 738 (Pa. 2012). *Mouzon* explained that, at common law, the defendant had the burden to prove affirmative defenses such as self-defense, a construct carried over into the Crimes Code. *See* 18 Pa.C.S. §505 (justification). Section 505 assigns no burden, but its Official Comment makes clear it "makes no substantial change in existing law. The intent of this section is to codify existing case law pertaining to self-defense and to cover in a single rule the law governing the use of defensive force against both attack and in crime prevention." *Mouzon*, 53 A.3d at 741. *Mouzon* went on to explain the assignment of a burden of **disproof** to the Commonwealth was effectuated by this Court's post-Crimes Code decisional law. The change in law was via cases predicting the United States Supreme Court would assign the burden to the Commonwealth as a matter of federal due process, as it had with certain other defenses.

The *Mouzon* Court further explained the prediction of a change in the burden of proof commanded by federal law proved erroneous with respect to self-defense. *See id.* at 742-43 ("Subsequent decisions from the High Court, however, reveal that the federal constitutional predictions respecting affirmative defenses in Pennsylvania did not materialize, including the affirmative defense of self-defense.") (discussing *Patterson v. New York,* 432 U.S. 197 (1977), and *Martin v. Ohio,* 480 U.S. 228 (1987)). "The overall principle that emerges from the High Court's decisional law is that federal due process permits States to place a burden on the defendant to prove an affirmative defense by a

preponderance of the evidence, so long as the defendant is not thereby required to negate an element of the offense." 53 A.3d at 743.

Thus, if the General Assembly determines to revisit justification, whether focusing on the castle doctrine or not, it may affirmatively address the broader underlying issue of burden of proof now that *Mouzon* effectively recognized our prior decisional law may have erroneously recalibrated the governing principles reflected in the Crimes Code.